UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| COLLEEN F. W.[1], | |
| Plaintiff, | |
| v. | CASE NO. 3:23-CV-493-SJF |
| COMMISSIONER OF SOCIAL SECURITY[2], | |
| Defendant. | |

**OPINION and ORDER**

Plaintiff Colleen F. W. ("Ms. W") seeks judicial review of the Social Security Commissioner's decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). The parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) on June 29, 2023. [DE 9]. This case was then reassigned to the undersigned magistrate judge on August 15, 2024, and the parties consented to the continued exercise of jurisdiction to a magistrate judge. [DE 24]. Accordingly, this Court now enters a ruling in this matter pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. §405(g). [DE 9, DE 24].

For the reasons discussed below, the Court **AFFIRMS** the decision of the Commissioner of the Social Security Administration ("SSA").

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Leland Dudek was sworn into the office of Commissioner of Social Security on February 16, 2025, and he is substituted as Defendant is his official capacity as Commissioner. *See* Fed. R. Civ. P. 25(d).

**I.    OVERVIEW OF THE CASE**

Ms. W applied for DIB and SSI on February 17, 2021. In her applications, she alleged a disability onset date of September 16, 2016. Ms. W's application was denied initially on October 26, 2021, and upon reconsideration on February 3, 2022. Ms. W filed a written request for hearing on February 17, 2022. Following a telephone hearing on July 19, 2022, the Administrative Law Judge ("ALJ") issued a decision on October 31, 2022, which affirmed the SSA's denial of benefits. The ALJ then issued an amended decision on November 4, 2022, again affirming the SSA's denial of benefits.

On April 6, 2023, the Appeals Council denied Ms. W's request for review of the ALJ's unfavorable decision, making the ALJ's decision the final decision of the Commissioner. *See Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Ms. W timely filed the instant action on May 26, 2023. Ms. W filed her opening brief on October 25, 2023, and the Commissioner filed his Memorandum in Support of Decision on January 24, 2024. This matter became ripe on February 7, 2024, when Ms. W filed her reply.

**II.    APPLICABLE STANDARDS**

    **A.    Disability Standard**

To qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work

activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB under the Act includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his Residual Functional Capacity ("RFC"); and, if not, (5) whether the claimant is able to perform other work. 20 C.F.R. §§ 4041520; 416.920.[3] The claimant bears the burden of proof at every step except Step Five, where the burden of proof shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

B.    **Standard of Review**

The Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, this Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a

---

[3] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, however, the ALJ must

4

confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)).

If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). On the other hand, "[a]n award of benefits is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion.: *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III.   DISCUSSION

#### A.   Summary of the ALJ's Decision Denying Benefits

Ms. W's telephone hearing before an ALJ took place on July 19, 2022. On November 4, 2022, the ALJ issued a written decision finding that Ms. W was not disabled, conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520.

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. The ALJ determined that Ms. W had not engaged in substantial gainful activity since her alleged onset date of September 16, 2016. (AR 25).

At Step Two, an ALJ's inquiry focuses on whether a claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ found that Ms. W suffers from the following severe impairments: cervical and lumbar degenerative disc disease, status post lumbar surgery; fibromyalgia with history of positive ANA; and bilateral carpal

5

tunnel syndrome. (*Id.*). On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). Here, the ALJ found that Ms. W suffers from the non-severe impairments of hypertension, asthma, vitamin D deficiency, migraines, depression, anxiety, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). (AR 26).

At Step Three, the ALJ determined that none of Ms. W's severe impairments, nor any combination of her impairments, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 29). The ALJ considered Listings 1.08, 1.15, 1.16, 1.18, 11.0, and SSR 12-2p. Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. W can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. The ALJ found that Ms. W has the

6

residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), but with certain additional limitations:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she can occasionally stoop, kneel, crouch, and climb ramps or stairs. She can never crawl or climb ladders, ropes, or scaffolds. She can have no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights or dangerous machinery. She can occasionally reach overhead with the bilateral upper extremities. She can frequently handle, perform gross manipulation, finger, and perform fine manipulation with the bilateral upper extremities. She must be allowed to alternate into the sitting position from the standing and/or walking positions every thirty to forty-five minutes for two-to-three minutes while at the workstation. She must be allowed to alternate into the standing position from the sitting position every thirty to forty-five minutes for two-to-three minutes while at the workstation.

(AR 30). Given that Ms. W was limited to less than the full range of light work, at Step Four, the ALJ determined that she could not perform her past relevant work as a meat packer, industrial cleaner, box maker, production supervisor, or vehicle assembler. (*Id.*). Accordingly, the ALJ moved on to the last step in the five-step sequential analysis.

At Step Five, while the burden of proof shifts to the Commissioner, the Commissioner need only show that the claimant can perform some type of substantial gainful work existing in the national economy in significant numbers. 42 U.S.C. § 423(d)(2)(A). ALJs typically enlist a vocational expert ("VE") to testify about which occupations, if any, a claimant can perform. *See* S.S.R. 83-12, 1983 WL 31253, at *2 (Jan. 1, 1983). VEs use information from the Dictionary of Occupational Titles ("DOT") and their professional experience to inform their assessments of a claimant's ability to perform certain types of work. *See* SSR 24-3p. Here, the VE identified three jobs that Ms. W could still perform with her RFC—router, collator operator, and laboratory sample

7

carrier—which, respectively, have 25,100 jobs nationally, 32,900 jobs nationally, and 10,700 jobs nationally.

Finding that Ms. W could make an adjustment to other work that existed in significant numbers, the ALJ determined that Ms. W was not under a disability, as defined in the Act, from her alleged onset date through the date of ALJ's decision.

### B. Issues for Review

Ms. W raises two overarching issues on judicial review. First, Ms. W contends that, at Step Four, the ALJ erred in assessing Ms. W's RFC by failing to account for her limitations caused by her mental impairments. Ms. W points to the state agency medical consultants' opinions that Ms. W had a moderate limitation in concentration, persistence, and pace, contending that the ALJ should have adopted this finding and incorporated it into her RFC. Second, Ms. W contends that, at Step Five, the ALJ erred by failing to resolve the apparent conflicts between the VE's testimony and the information provided by the DOT. As part of this second argument, Ms. W contends that the ALJ failed to resolve two separate conflicts between the VE's testimony and the DOT: first, the RFC limitation to occasional reaching overhead and the VE's testimony that Ms. W could perform jobs that, based on the DOT, require frequent reaching in any direction; and second, the RFC limitation to alternating between sitting and standing at 30-45 minute intervals and the VE's testimony that Ms. W could perform jobs that require light exertion work.

In response, the Commissioner contends that the ALJ reasonably determined that Ms. W's mental conditions did not significantly affect her work-related functioning and

8

identified abundant evidence that conflicted with the state agency psychologist's assessments that Ms. W had more limitations in concentration, persistence, or pace. As to Ms. W's second argument, the Commissioner contends that no apparent conflict existed between the DOT and the VE's testimony on the amount of overhead reaching or regarding a sit/stand option. Moreover, the Commissioner contends that, even if there were conflicts, the ALJ and VE reasonably resolved them.

### C.    Discussion

#### 1.    Mental RFC Limitations

Ms. W first contends that, at Step Four, the ALJ erred in assessing Ms. W's RFC by failing to account for her limitations caused by her mental impairments. In response, the Commissioner contends that the ALJ reasonably determined that Ms. W had no significant mental dysfunction warranting additional RFC limitations.

The Court begins by considering the ALJ's findings in the decision. At Step Two, the ALJ determined that Ms. W's depression, anxiety, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD) were non-severe impairments. Thus, the ALJ found that these impairments, when "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities[.]" (AR 26).

The ALJ also stated that, in making this finding, she considered the broad functional areas of mental functioning. If the claimant has a medically determinable

mental impairment, then the ALJ rates[4] the degree of functional limitation in four broad areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 404.1520a(c)(3). These functional areas are known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq.

In analyzing the Paragraph B criteria, the ALJ must incorporate "a specific finding as to the degree of limitation in each of the functional areas." *Id.; see also Craft*, 539 F.3d at 674–75; *Timothy H. v. Kijakazi*, No. 20 C 581, 2022 WL 4079433, at *3 (N.D. Ill. Sept. 6, 2022). The ALJ's analysis must cite evidence that supports his conclusion for each functional area. *Timothy H.*, 2022 WL 4079433, at *3. To satisfy the paragraph B criteria, the claimant must establish "extreme" limitation of one, or "marked" limitation of two, of the four functional areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.00(A)(2)(b).

Here, the ALJ found that these impairments caused no more than a mild limitation in any of the functional areas. As part of this determination, the ALJ reviewed records from a counseling center where Ms. W was initially assessed in May of 2015 and later during appointments in 2016, 2017, 2018, and 2019. The ALJ also reviewed records from Ms. W's pain management provider and from her primary care doctor in 2019. Finally, the ALJ discussed additional records from Ms. W's primary care doctor from 2020, 2021, and 2022.

---

[4] These functional areas are rated on a five-point scale of none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).

The ALJ also considered the psychological examination and other opinion evidence available. For claims filed after March 27, 2017, such as Ms. W's claim, an ALJ "does not give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The regulations instead require an ALJ to explain "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Persuasiveness of a medical opinion is based upon several factors: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; and specialization. 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," while "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (internal citation omitted). Accordingly, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinion(s) . . . will be." Id. § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion(s) . . . is

11

with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." Id.

The ALJ must "explain how [he] considered the supportability and consistency factors." *Id.* "Failure to adequately discuss supportability and consistency requires remand." *Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-cv-178 JD, 2022 WL 2384031, at *3 (N.D. Ind. July 1, 2022) (citing *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021)). However, the ALJ is not required to explain how she considered the other factors if they are not relevant to the decision. *Id.* Consistent with general legal standards for reviewing social security cases, an ALJ need only "minimally articulate [her] reasoning for how [s]he assessed a medical opinion, [but] [s]he must still consider the regulatory factors and build a 'logical bridge' from the evidence to h[er] conclusion." *Taylor v. Kijakazi*, No. 2:22-cv-32-PPS-JPK, 2023 WL 334601, at *3 (N.D. Ind. Jan. 20, 2023) (internal citation omitted).

Ms. W contends that the ALJ failed to adequately explain why she ignored the opinions from all three examining or reviewing doctors to find that Ms. W does not have a severe mental impairment or that Ms. W did not have a moderate limitation in concentration, persistence, or pace. But the ALJ did discuss these opinions and explain why they were not persuasive, articulating her reasoning within the regulatory framework. First, the ALJ discussed the psychological consultative examination conducted by Paul Roberts, Ph.D., in detail. The ALJ noted that Dr. Roberts assessed Ms. W with major depressive disorder, PTSD, and ADHD, but stated that because Dr. Roberts did not report any specific functional limitations based on these findings, his

assessment had "diminished probative and persuasive value." (AR 28). The ALJ also reviewed the opinions of State agency psychological consultants Stacia Hill, Ph.D. and B. Randal Horton, Psy.D., who reported that the claimant had moderate limitations in the ability to concentrate, persist, or maintain pace. The ALJ explained, however, that although Drs. Hill and Horton supported their opinions with an explanation of the evidence used to formulate them, she did not find these opinions persuasive because they were not consistent with other evidence in the record supporting mild mental limitations—evidence which the ALJ discussed in detail, as noted *supra*. (AR 28).

This Court defers to the ALJ's weighing of the medical opinions if a reasonable mind could accept the ALJ's explanation. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Here, the ALJ minimally articulated her reasoning for how she assessed these medical opinions and used the regulatory framework. The decision of the ALJ concluding that Ms. W's mental impairments amount to a minimal limitation on Ms. W's ability to do basic work activities and are nonsevere is substantially supported by the record. Moreover, Ms. W does not base any of her arguments challenging the ALJ on the standards for persuasiveness of medical opinions or otherwise engage with the regulatory requirements. Without more from Ms. W, the Court cannot find that remand is required.

### 2. Conflicting Testimony at Step Five

Next, Ms. W contends that at Step Five, the ALJ erred by failing to resolve the apparent conflicts between the VE's testimony and the information provided by the DOT as required by SSR 00-04p. *See* Pol'y Interpretation Ruling : Titles II & Xvi: Use of

Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000). Ms. W first contends that the ALJ and VE failed to resolve the conflict between her RFC limitation to occasional overhead reaching and the jobs identified by the VE at Step Five, all of which require frequent reaching in any direction. Second, Ms. W contends that the ALJ also failed to identify and resolve Ms. W's RFC limitation to alternating between sitting and standing at 30–45-minute intervals and the RFC assessment of light work. In response, the Commissioner first contends that there was no apparent conflict between the DOT and the VE's testimony on the amount of overhead reaching required by the jobs identified at Step Five. The Commissioner explains that the DOT does not separate how much reaching in each direction any jobs require, and as such, the VE's testimony was not in conflict with the DOT; rather, it was a supplement to the DOT. As to Ms. W's second argument regarding a sit/stand option, the Commissioner likewise contends that there was no apparent conflict between the VE's testimony and the DOT because the DOT does not address this.

  At the hearing, after Ms. W's attorney questioned her, the ALJ proceeded to take testimony from the VE, Michael L. Blankenship. The hearing transcript first shows that the ALJ introduced Mr. Blankenship and asked Ms. W's attorney if he objected to Mr. Blankenship's qualification as the VE:

```
         ALJ:  All right.  Thank you.  So what we'll do now is take the
   testimony from the vocational expert.  Mr. Blankenship, will you
   state your name for the record?
         VE:  My name is Michael L. Blankenship.
         ALJ:  And is the resume in the file marked as Exhibit 12B a true
   description of your professional qualifications?
         VE:  It is, Judge.
         ALJ:  All right.  Counsel, do you have any objections to the
   vocational expert's qualifications to testify as a vocational expert?
         ATTY:  No objections.
```

(AR 147). The ALJ proceeded to ask the VE hypotheticals based on Ms. W's RFC, with the VE providing that Ms. W could still perform the three jobs identified in the decision. The ALJ then asked the VE:

```
     Q   Okay.  And has your testimony been consistent with the DOT?
     A   Judge, the best of my ability, I offered the classifications
 determined by the Department of Labor.  I made the one adjustment on
 the basis of the production supervisor position because I didn't
 think her time there would equivocate to skilled work, so I dropped
 that to semi-skilled work.  You asked me a question about limiting
 overhead reaching bilaterally.  The Department of Labor doesn't
 separate reaching by direction.  It just simply says that it' the
 function of extending the hands and arms in any direction.  Let's
 see.  I think those are the only deviations, Judge.  So opinions that
 I've offered there are based on professional training and experience
 and not the Department of Labor guidelines.
```

(AR 152). The ALJ's amended decision acknowledged this inconsistency based on SSR 00-4p as follows:

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of

15

> Occupational Titles. The vocational expert confirmed that his testimony is consistent with the occupational information supplied by the Dictionary of Occupational Titles (Social Security Ruling 00-4p) with the exception of the overhead reaching, which are not accounted for in the Dictionary of Occupational Titles. Rather, the vocational expert based his testimony regarding those limitations on his experience, education, and knowledge of the job market. I find the testimony of the vocational expert to be credible, reliable, persuasive, and, thus, I accept it.

(AR 36).

Still, Ms. W contends that the ALJ's decision inadequately resolves conflicts between the VE's testimony and the DOT as to her overhead reaching limitations, warranting remand. In support of her first argument, Ms. W urges the Court to follow the decisions rendered in *Prochaska v. Barnhart*, 454 F.3d 731, 735-36 (7th Cir. 2006); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Thomas v. Berryhill*, No. 4:16-CV-94-TLS, 2018 WL 5093898 (N.D. Ind. Oct. 1, 2018); *Konda D. v. Saul*, 421 F. Supp. 3d 599, 609-11 (N.D. Ind. 2019); *Roxanne R. v. Berryhill*, No. 18 C 5484, 2019 WL 2502033, at *6 (N.D. Ill. June 17, 2019); *Tina H. v. Kijakazi*, No. 3:20CV743, 2021 WL 4237358 (N.D. Ind. Sept. 17, 2021); and *Melchi v. Kijakazi*, No. 1:21-CV-52-JPK, 2022 WL 4463338, at *15 (N.D. Ind. Sept. 26, 2022).

The Commissioner contends that, because the DOT does not cover directional reaching for any job, the VE's testimony is considered a supplement, not a conflict, and remand is not warranted. In support, the Commissioner directs the Court to the decisions in *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *2 (7th Cir. July 22, 2021) and *Wiley v. Saul*, No. 18-CV-835-WMC, 2019 WL 6799426, at *6 (W.D. Wis. Dec. 13, 2019). Moreover, the Commissioner contends that, even if an apparent conflict

16

existed, the ALJ reasonably resolved the conflict by relying on the expert's training and experience, which Ms. W's counsel did not contest at the hearing. As to Ms. W's second argument regarding a sit/stand option, the Commissioner likewise contends that there was no apparent conflict between the VE's testimony and the DOT because the DOT does not address this. In support, the Commissioner directs the Court to the decisions rendered in *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008); *Plummer v. Berryhill*, No. 3:16-CV-615-MGG, 2017 WL 4416838, at *4 (N.D. Ind. Oct. 4, 2017); and *Stromske v. Colvin*, 2015 WL 6750057, at *5 (S.D. Ill. Nov 5, 2015).

The parties both extensively and persuasively briefed their arguments on this issue. Ultimately, however, the Court need not probe the parties' arguments further because, even if Ms. W's arguments were ultimately meritorious, remand would not be warranted. As stated, Ms. W's arguments rest on SSR 00-04p, which provides that

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

But, effective January 6, 2025, SSR 00-4p was rescinded and replaced with SSR 24-3p. *See* SSR 24-3p , *available at* https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html. SSR 24-3p states that the SSA rescinded "SSR 00-04p and will no longer require our adjudicators to identify and resolve conflicts between occupational information provided by VSs and VEs and information in the DOT." *Id.* Instead, "when the claimant is represented, we expect the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in

17

developing the record through appropriate questions to the VE." *Id.* SSA also explains that

> [O]ur adjudicative experience since we issued SSR 00-04p has shown that requiring our adjudicators, VSs, and VEs to identify and explain conflicts with the DOT is time consuming. At the hearing level, the requirements of SSR 00-4p have led to unnecessary remands to resolve apparent conflicts that were not identified at the hearing when the VE testified, and the requirements of SSR 00-4p might discourage VSs and VEs from using occupational data in sources other than the DOT.

*Id.* In terms of application, SSR 24-3p also states that SSA will begin using it on its applicable date of January 6, 2025. Relevant to Ms. W's case, the ruling also states "[i]f a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in the decision we make after the court's remand." *Id.* at fn. 1.

Thus, though both parties point to persuasive authority to support their competing positions, one overarching principle remains undisputed: an ALJ's failures do not merit reversal when they are harmless. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). An error is harmless if "the ALJ would reach the same result on remand." *Id.* To make this determination, the court must "look to the record to see 'if '[it] can predict with great confidence what the result on remand will be.'" *Id.* (internal citation omitted). Given SSA's rescindment of SSR 00-04p, an ALJ on remand would no longer be required to identify and resolve conflicts the way Ms. W challenges here—conflicts that Ms. W did not identify or challenge at the administrative level. Moreover, the ALJ explained her decision by considering "the vocational evidence in the case and the record overall" as required by SSR 24-3p. Ms. W's arguments are based solely on the requirements of SSR 00-04p, and she does not otherwise challenge these findings at Step

Five. *Id.* Without more from Ms. W, the Court declines to remand this case for further administrative proceedings. *See, e.g.*, *Luis L. v. King*, No. 24 C 16585, 2025 WL 389333, at *4 (N.D. Ill. Feb. 4, 2025) (finding an ALJ's failure to elicit further testimony or resolve conflicts between VE testimony and DOT harmless based on rescindment of SSR 00-4p).

### IV. CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 18th day of March 2025.

s/Scott J. Frankel<br>
Scott J. Frankel<br>
United States Magistrate Judge